UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KARLA ESTRADA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:20-cv-00642-JRS-DLP |
| ) | |
| WARDEN, ) | |
| ) | |
| Respondent. ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Karla Estrada's petition for a writ of habeas corpus challenges her conviction in prison disciplinary case RTC 20-09-0073. The record shows that Ms. Estrada was deprived of earned credit time without adequate notice of the charge against her. Accordingly, the Court grants Ms. Estrada's petition.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

In September 2020, Ms. Estrada was enrolled in a building trades course at Rockville Correctional Facility taught by Donald Kuk. Mr. Kuk wrote the following conduct report on September 4, charging her with "unauthorized reproduction or possession of any document" in violation of Code 230-B.

> On 9/3/2020 at approximately 11:05 AM a search was performed on the property of Offender Karla Estrada, DOC# 215347 in the Building Trades classroom (room A-1017 of the OSB), a set of cheat sheets for the Building Trades NCCER Core Curriculum module exams 4, 5, 7, 8 and 9 were found in her belongings. These items were confiscated and submitted to Education Site Coordinator Kara Burgess for review. The NCCER Security Statement states that, "Participants may not remove assessment materials or copy them in any form," and "Participants may not transmit assessment questions in any form during or after the assessment section." A copy of Offender Estrada's cheat sheets, a signed and dated NCCER Security Statement, and a copy of her Notice of Confiscated Property have been attached to this conduct report.

Dkt. 11-1.

The confiscation notice shows that several documents not mentioned in the conduct report were also confiscated, including a personal letter, drawings of Spiderman, and copies of legal mail belonging to other inmates. Dkt. 11-2 at 1.

At face value, the "cheat sheets" appear to be nothing more than lists of terms or concepts relevant to the building trades course. For example, the list labeled "Module Four" begins:

- trigger lock
- hammer drill
- Powder actuated fastner
- jigsaw/saber saw
- Sawzall
- bandsaw
- Angle grinder

2

Dkt. 11-2 at 3. However, each term is either the focus of a multiple choice question or an answer choice in the module 4 exam. *See* dkt. 12. The upshot of the conduct report is that Ms. Estrada made notes of the exam's contents and intended to remove them from the classroom.

On September 10, the prison staff notified Ms. Estrada that she was charged with "Counterfeit Documents" in violation of Code 230-B. Dkt. 11-4. Code 230-B prohibits "[c]ounterfeiting, forging, or unauthorized reproduction or possession of any document, article, identification, money, passes, security or official paper." Dkt. 11-3 at 2. This notice made no reference to the personal letter, Spiderman drawings, or legal mail confiscated from Ms. Estrada on September 3.

The matter proceeded to a hearing on September 15. Dkt. 11-5. According to the hearing officer's report, Ms. Estrada stated in her defense that the lists confiscated from her were "homework," which she was required to "copy word-for-word from the book and then do vocabulary." *Id.*

The hearing officer found Ms. Estrada guilty. *Id.* She did not accept Ms. Estrada's explanation. Instead, she reasoned, "Cheat sheets match up to test and make sense that they would be used to aid one while taking the tests." *Id.* The hearing officer reached this decision after considering the "cheat sheets," the module 4 exam, and the course's security statement. *Id.* There is no indication that the hearing officer considered the personal letter, Spiderman drawings, or legal mail confiscated from Ms. Estrada or that they were even part of the disciplinary proceeding to that point.

The hearing officer assessed sanctions, including a deprivation 30 days' earned credit time. *Id.* Although initially suspended, the hearing officer later imposed that sanction when Ms. Estrada was convicted of another disciplinary offense. *See* dkt. 11-8.

On September 15, Ms. Estrada appealed to the facility head, asserting the following grounds for relief:

- Mr. Kuk and Ms. Burgess deviated from prison policy in certain aspects of writing the conduct report and confiscation paperwork.

- The papers taken from her were homework, not counterfeit documents, so her conviction for violating Code 230-B was not supported by evidence.

- She was denied due process because she was not permitted to see the module 4 exam before or during her hearing.

*See* dkt. 11-6. On October 14, the facility head responded, in pertinent part:

> What is obvious is that you received three writeups stemming from a search of your property that began in the Building Trades classroom at approximately 11:05AM on 9/3/20, and continued through 11:18AM. **I am amending the offense code in this case from 230B to 215B, Possession of Unauthorized Property.** You were not only found in possession of cheat sheets which matched up to the Building Trades test, but also two letters for other offenders, and drawings which are prohibited in the classroom. The confiscated items are listed on the completed SF 36030, "Notice of Confiscated Property," attached to this case. **I am dismissing the other two conduct reports that were also issued to you as a result of this same search.**

*Id.* (emphasis in original). Code 215-B punishes "[u]nauthorized possession, destruction, alteration, damage to, or theft of property." Dkt. 11-3 at 1. The facility head did not modify Ms. Estrada's sanctions. Ms. Estrada then forwarded her appeal to the final reviewing authority, who affirmed the facility head's decision. Dkt. 11-6.

## II. Grounds for Relief

Ms. Estrada asserts three grounds for relief in her petition. The Court addresses only one in this Order: After the facility head modified her charge during the appeals process, Ms. Estrada was deprived of credit time without adequate notice of the charge against her. Because this argument merits relief, the Court does not reach the others.

4

### A. Right to Adequate Notice

Due process requires that an inmate be given advanced "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citations and quotation marks omitted).

Due process permits the prison staff to later modify the inmate's charge—but only if the original notice included "all the information he needed to defend against the [amended] charge." *Id.* at 911. Indeed, the charge may be modified by an administrative appeal officer well after the hearing is over. *Id.* at 910 ("[T]he Conduct Adjustment Board . . . found him guilty of a Code 100-A violation . . . . [T]he reviewing authority . . . modified the charge, . . . finding that Northern violated Code 111/113-A for attempted trafficking.").

The notice Ms. Estrada received in this case did not provide all the information she would need to defend against the charge for which she was ultimately convicted.

Ms. Estrada received a screening report notifying her that she was charged with creating or possessing "Counterfeit Documents." Dkt. 11-4. It was accompanied by a conduct report describing "cheat sheets" she apparently created from the module 4 exam. She defended that charge by attempting to persuade the hearing officer that the "cheat sheets" found in her possession were not counterfeit documents.

By virtue of the facility head's modification, Ms. Estrada was ultimately deprived of credit time for unauthorized possession of not only the "cheat sheets," "but also two letters for other offenders, and drawings which are prohibited in the classroom." Dkt. 11-6. To avoid conviction, Ms. Estrada would have to persuade the hearing officer that none of these documents was an

5

unauthorized possession. She was never provided the opportunity to do so. Her original charging notice made no reference to the letters or drawings; her hearing officer did not consider or discuss them; and she had no opportunity to address them before being convicted of unauthorized possession. *See* dkts. 11-1, 11-4, 11-5. And even though Ms. Estrada had an opportunity to address the "cheat sheets," she was told to defend the charge that she possessed them in violation of the counterfeiting provision—not that possessing them alone was a conduct violation.

The respondent argues that "[t]here is no material difference in the elements" of the two offenses. Dkt. 11 at 20. That proposition is not clear from the language of the two code provisions. Even if it was, though, the respondent does not address the fact that the facility head found Ms. Estrada guilty of possessing not only the "cheat sheets," but also drawings and other inmates' legal mail. Ms. Estrada was never provided with all the information she needed to defend against that conviction. *Northern*, 326 F.3d at 911.

The respondent also argues that, "[i]f the Court were to find that modification on appeal is prohibited in this case, the proper relief would be to reinstate the code B-230 finding." Dkt. 11 at 20, n.2. The respondent provides no legal support for the notion that this Court has authority to substitute one disciplinary offense for another. In fact, the respondent argues nearly the opposite in response to Ms. Estrada's contention that the allegations against her better fit a less serious code provision, 353-C: "There is no authority for the Court to reduce a charge." Dkt. 16 at 3.

Ms. Estrada was charged with and convicted of creating, or perhaps possessing, counterfeit documents based on her possession of the "cheat sheets." After her hearing, the facility head determined that she should not be punished for counterfeiting but for possessing a gaggle of contraband documents. Ms. Estrada was never provided an opportunity to defend that charge. She

6

was deprived of credit time without notice of her offense or the facts underlying it, and she was therefore denied due process.

### B. Exhaustion of Administrative Remedies

The respondent argues that each ground for relief Ms. Estrada presents in her habeas petition is procedurally defaulted because she failed to raise it in her administrative appeals. The respondent does not specifically address Ms. Estrada's lack-of-notice argument, though, or explain how she could have presented it in the administrative process. A brief review of the prison's disciplinary code reveals why.

A court may not grant a habeas petition "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). When the petitioner "has not exhausted a claim and complete exhaustion is no longer available, the claim is procedurally defaulted," and the district court may not grant habeas relief based on it. *Martin v. Zatecky*, 749 F. App'x 463, 464 (7th Cir. 2019). Because Indiana law does not provide for judicial review of prison disciplinary proceedings, § 2254(b)(1)'s exhaustion requirement demands that the prisoner exhaust her claims through the Indiana Department of Correction's (IDOC) administrative appeals process. *Moffat v. Broyles*, 288 F.3d 978, 981–82 (7th Cir. 2002).

The IDOC maintains a two-step administrative appeal process. Dkt. 11-9 at 3–6. The prisoner must first complete an appeal form and submit it to the warden or her designee—the "facility head." *Id.* at 3–4. If the prisoner is dissatisfied with the facility head's ruling, she may forward the original appeal and the facility head's decision to the final reviewing authority. *Id.* at 4. At either level, the reviewing official may modify the charge or sanctions, as the facility head did in this case. *Id.* at 5.

7

The second-level appeal "may be based only upon the same concerns" the prisoner raised in the original appeal to the facility head. *Id.* at 4. "Concerns that deviate from the first level appeal may not be considered." *Id.* No exception or alternative provision allows a prisoner to raise new grounds in her second-level appeal that arose only after the facility head decided the first-level appeal.

The respondent's procedural default argument relies on the premise that Ms. Estrada must have asserted in her appeal to the final reviewing authority that the facility head's modification caused her to be punished without adequate notice. But the disciplinary code forbade her to do so. Ms. Estrada could not raise her notice argument in her first-level appeal because the notice issue did not yet exist. The facility head had not yet modified the charge. After the modification, Ms. Estrada could not raise her notice argument in her second-level appeal because she did not present it to the facility head. Had she raised the notice issue, the final reviewing authority could not even have considered it. Dkt. 11-9 at 4.

The respondent ignores this predicament in her return to the Court's show-cause order (despite its obvious relevance) and in her surreply (even though Ms. Estrada raised it in her reply). *See* dkt. 15 at 4. Ms. Estrada had no administrative remedies available to present her lack-of-notice argument, *see* § 2254(b)(1)(A), and the respondent does not attempt to show otherwise. The lack-of-notice argument is not procedurally defaulted.

### IV. Conclusion

Karla Estrada's petition for a writ of habeas corpus challenging RTC 20-09-0073 is **granted**. Ms. Estrada's disciplinary conviction must be **vacated** and her sanctions **rescinded**. Her earned credit time must be **immediately restored**, and her new release date must be calculated accordingly. If her recalculated release date has already passed, she must be immediately released.

8

Ms. Estrada's motion requesting an update on the status of the case, dkt. [17], is **granted** with the issuance of this order.

The **clerk is directed** to enter final judgment consistent with this order.

**IT IS SO ORDERED.**

Date: 5/24/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KARLA ESTRADA
215347
ROCKVILLE – CF
ROCKVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
811 West 50 North
Rockville, IN 47872

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov